Frazier *v.* Ruskin et al., Appellants.

526

Argued September 12, 1963; reargued March 20, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

Saul Doner, with him Doner & Schaeffer, for appellants.

William Brodsky, for appellee.

OPINION BY FLOOD, J., April 14, 1964:

The defendants have appealed from a refusal of their motions for judgment n.o.v. and new trial following a verdict for the plaintiff.

The defendant Dora Ruskin, on December 29, 1955, executed a lease-sale agreement with the plaintiff and his wife under which they agreed to buy premises at 1444 North Fifty-Eighth Street, Philadelphia, for $8500. The buyers agreed to pay $600 at the signing of the agreement and $85 monthly thereafter on account of principal and interest until $2550 had been paid on account of the purchase price. The seller agreed that when the balance due on the price had been reduced to $5950 she would execute a fee simple deed for the premises, take a purchase money mortgage or secure a mortgage for the buyers for this balance and advise the buyers by written notice that settlement was to take place within ninety days. Upon receiving this notice, the buyers were to make all necessary arrangements for the settlement.

The plaintiff and his wife moved into the premises, made the down payment and monthly payments of $85 from January 5, 1956, to and including February 5, 1959, and a further payment of $45 on February 28,

1959. The plaintiff's wife died on March 26, 1959, after which he left the property and made no more payments. When interest is deducted from the total amount paid to the seller, it appears that the principal remaining due after the payment of February 28, 1959, was less than $5950. Under the agreement, this fixed a duty upon the seller to notify the plaintiff that settlement should take place within ninety days. She never so notified him.

The notation which Mrs. Ruskin or her agent entered in the plaintiff's receipt book charged against his monthly $85 payments not only interest but also certain additional amounts for taxes and insurance. As a result the book showed over $6600, instead of less than $5950, due on principal on February 5, 1959, and at the time when the plaintiff left the premises.

The court made its own calculation and told the jury that this showed that on February 9, 1959, the plaintiff had reduced the outstanding principal below $5950, that if this was correct Dora Ruskin was in default in failing to notify him that settlement should be made within ninety days thereafter, and the plaintiff was not in default when he left the premises. While, in terms, he left to the jury the question of (1) the correctness of his calculation of the amount due, (2) whether Dora Ruskin breached the contract and (3) whether the plaintiff breached the contract, the effect of his charge was to leave little room for the jury to find any but affirmative answers to the first two questions and a negative answer to the third. Their verdict indicates that they so found.

Evidence was given that the fair rental value of the property was $55 per month. The jury returned a $1707.50 verdict for the plaintiff, in accordance with the court's instruction that if they found for the plaintiff, the damages should be the difference between the amount paid by him under the contract and the fair

rental value for the period during which he occupied the property, plus interest at six per cent from March, 1959. The verdict was not only against Dora Ruskin, who made the lease-sale contract with the plaintiff, but also against her son and daughter-in-law, Samuel Ruskin and Shirley Ruskin, to whom she had conveyed the property.

The defendant Dora Ruskin was in default under the agreement in failing to notify the plaintiff to settle for the property after $2550 had been paid on account of principal. Even if the plaintiff was also in default thereafter by not continuing his payments, this gave Mrs. Ruskin no right to a forfeiture, although it might prevent the plaintiff from getting specific performance of the contract. The situation is the same as though there were an implied rescission of the contract based on the abandonment by both parties of the performance to which the other was entitled and the failure of either to make any attempt to obtain compliance by the other. See *Weldon and Kelly Co. v. Pavia Co.*, 354 Pa. 75, 79, 46 A. 2d 466, 468 (1946). Under such circumstances the plaintiff, even though he had breached, would be entitled to restitution of such amount as he has paid under the agreement, less the fair rental value of the property. Restatement, Contracts, §§347, 357. This is what the jury gave him and any error in the charge with regard to whether or not he was in default was thus rendered harmless.

The defendants' main contention is that under the agreement the purchaser was to pay the taxes and water rent as well as principal and interest. The contract does not so read.

The provision in the printed form that the purchaser agrees to pay one-twelfth the yearly taxes, water rent, sewer rent and other governmental charges levied against the premises, as well as one-twelfth the annual cost of fire insurance, was deleted. The defendants

rely upon the language of paragraph fifteen of the printed agreement to the effect that if the purchaser shall default thirty days in the payment of the monthly sums aforementioned "or one-twelfth of the annual charges for taxes, sewer rent and water rent or other proper charges or the maintenance of insurance, then the party of the first part may consider the agreement null and void." But in view of the specific deletion of any obligation to pay these items by an inked line drawn through the printed agreement, this default clause cannot operate to reinstate the deleted obligation in addition to the monthly $85.

Mrs. Ruskin's agent, Mr. Addison, testified that the parties intended that the obligation to pay the taxes and other charges should continue but the buyer's total obligation should be limited to the payment of $85 per month. If this was the intention, it contradicts the written agreement that the $85 should be applied only to interest and principal and is not in accord with paragraph fifteen which refers to default in the payment of either the "monthly sums aforementioned" *or* of these additional items. We find no obligation upon the buyers under the agreement to pay any sums on account of taxes or insurance.

The defendants contend that the real estate expert's testimony as to rental value should have been stricken since he had never been in the property. He testified that he knew the block in which the property was located and the outside of the house. He stated that the rental value would be $55 per month for the premises in "ordinarily good condition", and "if it were in poor condition, there should have been a rental value of less". If the jury had found a lower rental value, the verdict against the defendants should have been correspondingly higher. If there was any error, it was harmless to the defendants.

The defendants argue that the plaintiff should be bound by his acquiescence in the entries in his receipt book which indicated that the payments were being applied, in part, to taxes and insurance. Whether there would be consideration for such a modification of the agreement is doubtful. There was testimony that the plaintiff was illiterate. The trial judge submitted the question of waiver to the jury which found for the plaintiff. We see no ground for disturbing this determination.

The defendants object to the court's calculation of the amount remaining due on principal, and the presentation of this calculation to the jury as to the court's Exhibit 1. The trial judge's calculation appears to be substantially accurate under his interpretation of the agreement, with which we agree. He states in his opinion that he submitted it to counsel prior to the charge and no objection to it was expressed.

The defendants raise other objections covering a wide range, which will be mentioned only briefly.

The testimony of Mr. Addison regarding the agreement was not inadmissible, since Mrs. Ruskin herself avers in the answer that he signed the agreement in her behalf and was her agent in the very matter about which the testimony was given.

The defendants contend that it was improper for the court to state that the agreement needed no explanation since it contained an obvious ambiguity with regard to the obligation to pay taxes. If any ambiguity existed, it was patent or apparent on the face of the agreement or, as the appellants say, obvious and not dependent upon extrinsic evidence for its interpretation. Consequently, the construction of the written agreement was for the trial judge. As a matter of fact, in our opinion the agreement is not ambiguous and the trial judge properly construed it. There was noth-

ing on this point to submit to the jury. *Hewes v. Mc-Williams,* 412 Pa. 270, 194 A. 2d 339 (1963).

The trial judge sustained an objection to a question put to the plaintiff on cross-examination as to whether the receipt book reflected the agreement. This also was harmless, since the defendants' counsel was allowed to question the plaintiff fully on whether he agreed with what was put in the receipt book.

The defendants suggest that it was error to exclude what the plaintiff's lawyer told him about the meaning of the agreement. This opinion was irrelevant in the absence of any averment of fraud or of any addition to or deletion from the agreement by accident or mistake.

The trial judge's interruptions of the defendants' witness, Addison, and his argument with him, were unfortunate and would have been better omitted. But Mr. Addison's testimony contradicted the written agreement and was inadmissible under the parol evidence rule. The impropriety in the court's action did not, therefore, amount to prejudicial error.

None of the other points raised by the defendants constitute prejudicial error. The testimony indicates that the agreement was breached by both parties almost simultaneously. Both accepted the situation and made no attempt to enforce the agreement against the other. The plaintiff is consequently entitled to restitution of the amount paid by him in excess of the fair rental value of the property during the period of his occupancy.

As to the defendants Samuel and Shirley Ruskin, the complaint alleges only that on October 17, 1958 Dora Ruskin conveyed the premises to them without notice to the plaintiff but retained a beneficial interest in the property and that the monthly payments were made to all the defendants. Samuel and Shirley admitted these averments in the answer. An admission

in the pleadings that the plaintiff made the payments to all the defendants justifies the judgment against all three, especially since there was nothing in the evidence to qualify this admission. Therefore, the judgment against Samuel and Shirley Ruskin was not improper even though there was no evidence of conspiracy between them and Dora Ruskin.

We allowed reargument as to the judgment against Samuel and Shirley Ruskin upon their complaint that the pleadings contained no such admission. In paragraph five of his amended complaint, the plaintiff avers that he "paid to . . . Dora Ruskin, Samuel Ruskin and Shirley Ruskin, defendants, the sum of $85.00 per month up to and including the early part of February 1959, and paid $45.00 on February 28, 1959 . . . ." Samuel and Shirley answered that "after reasonable investigation, defendants are without knowledge or information sufficient to form a belief as to the truth of these averments." This denial is patently insufficient since it is clear that the defendants must know whether or not they received the payment. They cannot be heard to say that they are without knowledge or information sufficient to form a belief as to the truth of such averments. See Goodrich-Amram, §1029-(c)-1.

Paragraph six of the complaint qualifies paragraph five alleging that the money was paid to Dora Ruskin and Pearl Udelson as the authorized agents of Samuel and Shirley. Here they merely answered that they "believe and have been informed and therefore aver that the allegation in this Paragraph of the Complaint stating that Dora Ruskin and Pearl Udelson were acting as agents of the parties is denied and need not be answered since it is a conclusion of law." The defendants cannot be heard to say that they do not know and cannot ascertain whether Dora and Pearl were their agents. This again is a matter of which they obviously

had first hand knowledge and their failure to deny it of their own knowledge renders their answer insufficient. See *Bair Adoption Case,* 393 Pa. 296, 304, 141 A. 2d 873, 877 (1958). This is especially so since the property had been conveyed to Samuel and Shirley four months before the last payment was made by the plaintiff. The existence of the agency is primarily a factual question and the averment cannot be dismissed as a question of law. Therefore, the agency of Dora and Pearl for Samuel and Shirley and the payments to them must be taken as admitted.

Judgment affirmed.

MONTGOMERY, J., concurs in the result.